IN THE UNITED STATES COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| ALBERTO VÁZQUEZ-SANTIAGO, <br><br> Plaintiff, <br><br> v. <br><br> EDWARDS LIFESCIENCES TECHNOLOGY SARL, LLC, <br><br> Defendant. | CIV. NO.: 19-1089 (SCC) |

## OPINION AND ORDER

Plaintiff Alberto Vázquez-Santiago originally filed this action in Puerto Rico state court against Defendant Edwards Lifesciences Technology Sàrl ("Edwards") for alleged wrongful termination and age discrimination in violation of Puerto Rico Public Law 100, P.R. Laws Ann. tit. 29, § 146 *et seq* ("Law 100"), and Puerto Rico Public Law 80, P.R. Laws Ann. tit. 29, §§ 185a-185k (2017) ("Law 80"). *See* Docket No. 7, Ex. 1. Defendant then removed the case to this Court on the basis of diversity jurisdiction. *See* Docket No. 1. Defendant moved for summary judgment, arguing that Plaintiff was terminated for just cause and not based on his age, and his claims therefore cannot survive summary disposition. *See* Docket Nos. 56, 57. Plaintiff opposed. *See* Docket No. 66. Defendant then filed a reply to Plaintiff's opposition, *see* Docket No. 89, to which

Plaintiff surreplied, *see* Docket No. 96. For the reasons stated herein, Defendant's Motion for Summary Judgment is GRANTED.

## I.      Background

On December 12, 2018, Plaintiff filed this action against Defendant in Puerto Rico state court, alleging violations of Law 80 and Law 100. *See* Docket No. 7, Ex. 1. Specifically, Plaintiff alleges that he worked for Defendant for over forty-one years until he was terminated on October 12, 2018. *See id.* at ¶¶ 10, 22. According to Plaintiff, who was sixty-one years old at the time of his termination, Defendant wrongfully discharged him due to his age and was replaced by a younger employee. *See id.* at ¶¶ 22, 23, 25.

On January 29, 2019, Defendant removed the case to this Court, invoking diversity jurisdiction. *See* Docket No. 1. On October 26, 2020, Defendant filed a Motion for Summary Judgment, arguing that Plaintiff had a history of repeated violations of Defendant's workplace standards and was therefore terminated for just cause. *See* Docket No. 56. Plaintiff opposed, arguing that Defendant's proffered reason for terminating him is merely a pretext for unlawful age discrimination. *See* Docket No. 66.

## II.     Undisputed Facts

In order to make its factual findings for the purpose of this Opinion and Order, the Court considered Defendant's Statement of Uncontested Material Facts ("DSUMF") at

Docket No. 57, Plaintiff's Opposing Statement of Uncontested Material Facts ("POSUMF") at Docket No. 66, Plaintiff's Statement of Additional Facts ("PSAF") at Docket No. 66 and Defendant's Reply to Plaintiff's Statement of Additional Facts ("DRPSAF") at Docket No. 89, Ex. 1.

1. Defendant is a Swiss company authorized to do business in Puerto Rico that manufactures and sells medical devices, including catheters. DUSMF ¶¶ 1-2; POSUMF ¶ 1.

2. Plaintiff began working for Defendant as a regular employee on April 18, 1977. DUSMF ¶ 23.

3. Plaintiff continued to work for Defendant until his termination on October 12, 2018, at which time he was sixty-one years old. DUSMF ¶¶ 22, 24; PSAF ¶ 13; DRPSAF ¶ 13.

4. Plaintiff received, read and kept copies of some of Defendant's employment policies, including those set forth in Defendant's Employment Manual. DUSMF ¶ 18; POSUMF ¶ 17.

5. At all relevant times, Plaintiff worked in the Incoming Inspection area of Defendant's facility in Añasco, Puerto Rico, specifically as Senior Inspector. DUSMF ¶ 27.

6. As Senior Inspector, Plaintiff's role was to perform in-process inspection of components of raw materials and devices, sampling of raw materials for production and

inspection upon completion of the applicable process, among other essential job functions, which required following and complying with established work instructions and Standard Operating Procedures ("SOP"). DUSMF ¶ 29.

7. The purpose of the Senior Inspector role is to conduct the in-process and completion inspections in order to ensure regulatory and design-standard compliance, as well as to train other employees assigned to Inspection. DUSMF ¶¶ 30-31.

8. Because his work as Senior Inspector required strict adherence to SOP, Plaintiff received many trainings in that area. DUSMF ¶¶ 32-33; POSUMF ¶ 23.

9. Plaintiff was provided a copy of and was responsible for reading, knowing and complying with Defendant's Employee Handbook, which outlines Defendant's progressive disciplinary system under which infractions or violations do not expire and are considered part of an employee's progressive discipline record and are evaluated when determining what disciplinary measure or action to apply upon subsequent violations or offenses. DUSMF ¶¶ 35-36.

10. On April 2, 2003, Plaintiff received a written warning based on a quality documentation violation he committed the prior month during an inspection; specifically, the labeling of the incorrect material

control number that is used to determine the
parameters of testing catheters.  As a result, Plaintiff
was suspended without pay from March 19 to March
30, 2003. DUSMF ¶¶ 37-38; POSUMF ¶ 24.

11. On February 24, 2005, Plaintiff received a written
warning after committing a quality violation in the
identification of a manufacturing product as he
performed the visual inspection and sampling of that
product. DUSMF ¶ 39.

12. On May 16, 2005, Plaintiff received a written warning
after committing quality documentation errors;
specifically, failing to inspect according to the
established specifications and instructions, including
certain SOP. DUSMF ¶ 41.

13. On August 9, 2006, Plaintiff received a disciplinary
action after he conducted a visual inspection of
corrugated packaging material without conforming to
the drawing, established quality criteria and operating
procedures, after which he authorized the release of
the nonconforming material. The violation impacted
138 boxes in the access area and 503 boxes that had
already been used. Plaintiff was suspended without
pay from August 9 to August 11, 2006. DUSMF ¶¶ 43-
44.

14. Plaintiff committed two additional violations during two inspection procedures on August 1, 2006 and September 28, 2006, respectively, resulting in a written admonishment dated October 2, 2006. In issuing the written admonishment, Defendant took his August 2006 suspension into consideration and decided not to apply a more disciplinary measure, choosing instead to give Plaintiff an opportunity for improvement, while also advising him that more severe disciplinary measures would be imposed in the case of further violations. DUSMF ¶¶ 45-47.

15. On April 24, 2012, Plaintiff received a written warning after he deviated from certain SOP in the calculation and registration of expiration dates for epoxy conductive silver, resulting in approximately $16,000 in backorder losses to Defendant. DUSMF ¶ 50; POSUMF ¶ 28.

16. On November 10, 2017, Plaintiff received a final written warning with an ultimatum based on Plaintiff's deviation from the inspection procedure for control of received material in the calculation, verification and registration of a lot's expiration date. DUSMF ¶ 51; POSUMF ¶ 29.

17. With every disciplinary action received, Plaintiff was warned that future violations of Defendant's policies and rules would result in the application of

disciplinary actions under Defendant's employment and progressive and corrective discipline polices, up to or including termination from employment. DUSMF ¶ 52; POSUMF ¶ 30.

18. On August 8, 2018, Defendant's manufacturing personnel detected a nonconformance on syringes and a quality investigation revealed that Plaintiff had signed off on the relevant inspection report as "reviewed by," even though it lacked data of the complete inspection results of the syringes in violation of Defendant's SOP. The error resulted in approximately $290 in losses for Defendant. DUSMF ¶¶ 54-55, 58.

19. The investigation also determined that another employee, Mercedita Cruz Rodríguez, was at fault for failing to document the inspection data in the Incoming Inspection Report. DUSMF ¶ 56; POSUMF ¶ 32.

20. As a result of the violation committed by Ms. Cruz, she was suspended without pay. DUSMF ¶ 74; POSUMF ¶ 45.

21. On October 4, 2018, Plaintiff committed an error during the incoming inspection and sampling of polycarbonate molded article, in which Plaintiff performed the task one grade above the specification temperature limit established under the SOP and as

authorized by the Food and Drug Administration ("FDA"). A resulting quality investigation found that there was no financial impact in regard to this nonconformance. DUSMF ¶¶ 60-62; POSUMF ¶ 35.

22. The human resources investigation resulting from Plaintiff's 2018 violations was conducted by Wanda López and Nayda Guzmán, who no longer work for Defendant. Defendant's current human resources manager, Dianelly Torres, explained that in general, in cases involving quality infractions by employees, the quality department conducts a quality investigation and determines the specific infraction or error committed by the employee. Human resources then receives the quality documentation, analyzes that information and evaluates the corresponding disciplinary action to be applied by referencing the Employee Handbook, considering the employee's disciplinary history and his or her performance. DUSMF ¶ 65; POSUMF ¶ 38.

23. Plaintiff was terminated from employment on October 12, 2018, less than one year after receiving a final written warning and ultimatum. DUSMF ¶ 70; POSUMF ¶ 42.

24. At all relevant times, there were four regular employees working as Inspectors in the Incoming Inspection area at Defendant's Añasco location:

Plaintiff, Margarita Lorenzo, Mercedita Cruz and Sixto Rodríguez. DUSMF ¶ 72.

25. Ms. Cruz began working for Defendant on November 21, 1989 and her date of birth is January 11, 1968. DUSMF ¶ 76.

26. Ms. Lorenzo, who also had the role of Senior Inspector, was involved in manufacturing quality violations in October of 2019, in which quality personnel found that she had failed to document inspection data. DUSMF ¶¶ 63, 77.

27. Effective October 31, 2018, Ms. Lorenzo resigned from employment before Defendant applied any progressive and corrective disciplinary measures. She was over forty years old at the time of her resignation. DUSMF ¶¶ 78-79; POSUMF ¶ 47; PSAF ¶ 34; DRPSAF ¶ 34.

28. After October 12, 2018, Defendant terminated from employment another employee, Waldimir Morales-González, for having committed an error that resulted in a monetary loss for Defendant of less than $290. Mr. Morales was thirty years old at the time of his termination. DUSMF ¶ 86.

29. Prior to Plaintiff's termination, Defendant brought in a woman named Hilda Rodríguez, who was younger than Plaintiff, to be trained by him. She was later hired

as an Incoming Inspector. DUSMF ¶¶ 83-84; POSUMF
¶ 49; PSAF ¶ 5; DRPSAF ¶

30. After Plaintiff's termination, Defendant hired a total of
133 regular employees, fifty-one of which are over the
age of forty, or about thirty-eight percent of the new
hires. DUSMF ¶ 87.

31. Currently, there are 652 regular employees at
Defendant's Añasco facility, 503 of which are over the
age of forty, or about seventy-seven percent, including
seventy-seven employees over the age of sixty.
DUSMF ¶ 88.

32. Plaintiff never made a complaint to Defendant that he
felt discriminated against due to his age during the
course of his employment. DUSMF ¶¶ 19-20; POSUMF
¶ 18; PSAF ¶ 11.

**III.    Standard of Review**

A Court's discretion to grant summary judgment is
governed by Rule 56 of the Federal Rules of Civil Procedure.
That Rule states, in pertinent part, that summary judgment is
appropriate if "the movant shows that there is no genuine
dispute as to any material fact and the movant is entitled to
judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also*
*Zambrana-Marrero v. Suárez-Cruz*, 172 F.3d 122, 125 (1st Cir.
1999) (stating that summary judgment is appropriate when,
after evaluating the record in the light most favorable to the
non-moving party, the evidence "fails to yield a trial worthy

issue as to some material fact"). Thus, the party moving for summary judgment bears the burden of showing the absence of a genuine issue of material fact. *See Celotex v. Catrett*, 477 U.S. 317, 323 (1986). Once the movant meets this burden, the burden then shifts to the opposing party who may not rest upon mere allegations or denials of the pleadings, but must affirmatively show, through the filing of supporting affidavits or otherwise, that there is a genuine issue of material fact for trial. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Celotex*, 477 U.S. at 324.

According to Rule 56, in order for a factual controversy to prevent summary judgment, the contested facts must be "material" and the dispute must be "genuine." This means that, as the Supreme Court has stated, "only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson*, 477 U.S. at 248 (1986). Thus, a fact is material if, based on the substantive law at issue, it might affect the outcome of the case. *See Mack v. Great Atl. and Pac. Tea Co., Inc.*, 871 F.2d 179, 181 (1st Cir. 1989).

In making this assessment, the Court "must view the entire record in the light most hospitable to the party opposing summary judgment, indulging in all reasonable inferences in that party's favor." *Griggs-Ryan v. Smith*, 905 F.2d 112, 115 (1st Cir. 1990). The Court may safely ignore,

however, "conclusory allegations, improbable inferences, and unsupported speculation." *Medina-Muñoz v. R.J. Reynolds Tobacco Co.*, 896 F.2d 5, 8 (1st Cir. 1990).

## IV.    Analysis

### A.  *Puerto Rico Law 80*

Plaintiff alleges that he was wrongfully discharged under Puerto Rico Law 80, which provides relief to employees who are terminated from employment "without good cause." P.R. Laws Ann. tit. 29, § 185a (2003). Section 185b of Law 80 lists examples of good cause for termination and further provides that a termination which is "made by the mere whim of the employer or without cause relative to the proper and normal operation of the establishment" is not a termination for good cause. P.R. Laws Ann. tit. 29, § 185b (2003). Under Law 80, just cause for termination may include, as relevant here:

> . . .

> (b) That the employee engages in a pattern of deficient, unsatisfactory, poor, slow or negligent performance. This includes noncompliance with the employers' quality and safety rules and standards . . . .

> (c) The employee's repeated violations of the reasonable rules and regulations established for the operation of the establishment, provided that a written copy thereof has been timely furnished to the employee.

> . . .

*Id.* The following burden-shifting framework is applicable to law 80 claims[1]: "(1) the employee must [first] show that he or she has been discharged and allege that the dismissal was not justified; (2) the burden then shifts to the employer to show, by a preponderance of the evidence, that the dismissal was justified; and (3) if the employer shoulders that burden, the employee must rebut the showing of good cause." *García-García v. Costco Wholesale Corp.*, 878 F.3d 411, 420 (1st Cir. 2017) (quoting *Echevarría v. AstraZeneca Pharm. LP*, 856 F.3d 119, 140 (1st Cir. 2017)).

In interpreting Law 80 and subsequent Puerto Rico case law, the First Circuit has emphasized that judges do not serve "as [a] super personnel department, assessing the merits – or even the rationality – of employers' nondiscriminatory business decisions" and that while "Law 80 undoubtedly

---

[1] Defendant attempts to argue that the Labor Transformation and Flexibility Act, P.R. Laws Ann. tit. 29 § 121 *et seq.* ("LFTA"), which became effective on January 26, 2017 and amended Law 80 and Law 100, changes the traditional burden-shifting framework by placing the burden on Plaintiff to establish that his discharge was unjust under Law 80 and discriminatory on the basis of age under Law 100. While in their pleadings the parties make much of the application of the LFTA in this case, we need not wax longiloquent. The text of the LFTA clearly belies Defendant's argument; it states that the amendments have only a prospective effect – "[e]mployees hired before the effective date of this act shall continue to enjoy the same rights and benefits they enjoyed before, as expressly provided in the sections thereof." P.R. Laws Ann. tit. 29, § 121a; *see also Villeneuve v. Avon Prods., Inc.*, 919 F.3d 40, 43 n.1 (1st Cir. 2019). The parties agree that Plaintiff was hired by Defendant on April 18, 1977. The LFTA is therefore inapplicable here, and we will conduct our analysis of Law 80 and Law 100 under the burden-shifting frameworks as they existed prior to those amendments.

circumscribes the reason for which an employer may terminate an employee[,] . . . we do not read the statute to require a factfinder to regularly review the objective accuracy of an employer's conclusions." *Pérez v. Horizon Lines, Inc.*, 804 F.3d 1, 9 (1st Cir. 2015).

Applying this framework to the present case, Plaintiff has carried his initial burden of showing that he was terminated and alleging that such termination was unjustified given that it was discriminatorily based on his age. There is no disagreement between the parties that this first step has been met. We then turn to the second step of the analysis: Defendant's showing that the termination was for just cause and therefore justified. Defendant argues, and presents significant evidence, that Plaintiff's had a history of violations of its rules, regulations and SOP, which, under Defendant's progressive disciplinary record, resulted in his termination. Defendant provides evidence of at least seven infractions by Plaintiff while working as Senior Inspector in a highly regulated work environment, after most of which Defendant issued Plaintiff a written warning or even suspension but continuously gave him the opportunity to correct the behavior and keep his job. However, less than a year before his termination, Plaintiff was issued a final warning and an ultimatum that further violations would result in the loss of his job. Shortly before his termination, Plaintiff made another error in violation of Defendant's rules and regulations and

was consequently fired. Thus, Defendant's proffered timeline of events, supported by the undisputed facts, clearly indicate that the decision to terminate Plaintiff was for good cause, as defined by Law 80, and not made "on a mere whim." This is especially true given that even a singular violation of internal procedures has been found to constitute good cause. *See Vargas v. Royal Bank of Canada*, 604 F. Supp. 1036 (1984); *Delgado Zayas v. Hosp. Interamericano de Medicina Avanzada*, 137 D.P.R. 643, 650 (1994) ("We reiterate that Act 80 allows for an employee's discharge for a single offense provided that the circumstances of the case do not reflect arbitrariness or whim of the employer.").

To rebut this showing of good cause, Plaintiff notes that the quality violations committed by Plaintiff occurred over the course of forty-one and a half years and were significantly spread apart. He emphasizes that he did not incur in any disciplinary violations in the five-and-a-half years prior to the ultimatum issued to him by Defendant that ultimately resulted in his termination. He also argues that Defendant's employees that were deposed[2] in this case could not precisely outline the procedure that was followed in regard to

[2] Plaintiff argues that the unsworn statements submitted by Ms. Torres and Camille Lugo, Quality Manager, in addition to their deposition testimony constitute sham affidavits and should not be considered, given that they are inconsistent with their depositions. However, we find that those inconsistencies are not material and have no bearing in our analysis, and we therefore do not address Plaintiff's "sham affidavit" argument.

Plaintiff's termination and that his positive performance evaluations were also not considered as part of that process.

However, because these arguments merely question Defendant's proffered reason for Plaintiff's termination rather than affirmatively dispel them, they fail to rebut Defendant's showing of good cause. To satisfy this burden and withstand summary judgment, Plaintiff was required to do more than "cast doubt" on Defendant's proffered reason for his discharge; instead, Plaintiff had to "adduce probative evidence that [Defendant] did not genuinely believe in or did not in fact terminate [Plaintiff] for the given reason." *Costco*, 878 F.3d at 421. Plaintiff does not dispute his disciplinary record or the fact that Defendant utilizes a progressive disciplinary system that takes into consideration an employee's entire history of rules violations, nor does he produced any evidence that Defendant relied on anything but said record in making its decision to terminate him. In the absence of such evidence, the Court cannot question the merits of Defendant's nondiscriminatory business decision. As such, even viewing the facts in the light most favorable to Plaintiff, Defendant has sufficiently established that it terminated Plaintiff for good cause under Law 80.

B. *Puerto Rico Law 100*

Law 100 prohibits, *inter alia*, discrimination based on age in the workforce. P.R. Laws Ann. tit. 29, § 146. The burden-shifting framework under that law provides that: "(1) the

employee must first show that his or her discharge was not for just cause[3] - if successful, the employee enjoys a presumption that he or she has been the victim of discrimination; (2) the burden of production and persuasion then shifts to the employer to rebut this presumption." *Costco*, 878 F.3d at 423 (citing *Ramos v. Davis & Geck, Inc.*, 167 F.3d 727, 734 (1st Cir. 1999). Here, because we have determined that Defendant made the showing that it had just cause to terminate Plaintiff in the Law 80 context, it follows that "the Law 100 presumption [of discrimination] disappears." *Álvarez-Fonseca*. 152 F.3d at 28 (citing P.R. Laws Ann. tit. 29, § 148). Thus, Plaintiff bears "the burden of proof on the ultimate issue of discrimination," meaning that he "must prove that, even if the dismissal was justified, [Defendant] nevertheless violated Law 100 because the dismissal was motivated by discriminatory animus instead of or in addition to the legitimate reasons for the dismissal." *Id.* In other words, that the reasons offered were pretextual. *Cf. Pérez*, 804 F.3d at 8 n.4 ("[The Law 100] framework follows the Law 80 burden shifting framework" and "because no reasonable jury could conclude that [the employer] lacked cause to terminate [the employee,] . . . to succeed on his Law 100 claim [the employee]

---

[3] The Supreme Court of Puerto Rico has determined that, because Law 100 does not define "just cause," the definition would be drawn from an analogous statute – Law 80. *Álvarez-Fonseca v. Pepsi Cola of Puerto Rico Bottling Co.*, 152 F.3d 17, 28 (1st Cir. 1998) (citing *Báez García v. Cooper Labs., Inc.* 120 D.P.R. 145, 155 (1987)).

must show that [the employer's] proffered reason was pretext specifically designed to mask gender discrimination.").

After reviewing the record, we find that Plaintiff's age discrimination claims under Law 100 fail because "he has not 'proffered sufficient admissible evidence, if believed, to prove by a preponderance of the evidence . . . that the employer's justification . . . was merely a pretext for impermissible age discrimination.'" *Velázquez-Fernández v. NCE Foods, Inc.*, 476 F.3d 6, 11 (1st Cir. 2007) (quoting *Woodman v. Haemonetics Corp.*, 51 F.3d 1087, 1092 (1st Cir. 1995)). Plaintiff asks us to infer that age discrimination was the real cause of his termination; yet he provides no evidence from which we could draw such an inference. He notes that he was sixty-one at the time of his termination, that he was replaced by a younger worker, and that despite his disciplinary record he received consistently positive performance reviews. Beyond these observations, Plaintiff points to no facts that indicate discriminatory animus, such as evidence that Plaintiff was treated differently than other similarly-situated employees, *see Kosereis v. Rhode Island*, 331 F.3d 207, 214 (1st Cir. 2003), or that Defendant hired Ms. Rodríguez as part of a scheme to skew the company younger and push out older employees, *see Zampierollo-Rheinfeld v. Ingersoll-Rand de Puerto Rico, Inc.*, 999 F.3d 37, 58 (1st Cir. 2021) (finding that the record contained direct evidence to support plaintiff's theory that defendant selected him for termination because of his age,

due to defendant's desire to "rejuvenate" the company and therefore his Law 100 claims should survive). In fact, seventy-seven percent of Defendant's employees at the Añasco facility are over the age of forty, including fifty-one of the 133 new hires brought in after Plaintiff was terminated. These numbers clearly contradict Plaintiff's contention that Defendant acted with discriminatory animus given that they indicate that age does not play a role in Defendant's selection of employees. Thus, Plaintiff has "adduced no significantly probative evidence" – or any evidence at all for that matter – to suggest that his termination was motivated by his age. *Dávila v. Corporación De Puerto Rico Para La Difusión Pública*, 498 F.3d 9, 18 (1st Cir. 2007). Summary judgment is therefore appropriate as to Plaintiff's Law 100 claims.

### V.    Conclusion

Having carefully examined the arguments raised by the parties, Defendant's Motion for Summary Judgment at Docket Number 56 is GRANTED.

IT IS SO ORDERED.

In San Juan, Puerto Rico, this 10th day of August 2021.

S/ SILVIA CARREÑO-COLL
UNITED STATES DISTRICT COURT JUDGE